**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

**UNITED STATES OF AMERICA,**

**v.**

**EDGAR FABIAN VILLASENOR-GARCIA,**
**also known as "Gari," "Gary,"**
**and "El Monje,"**

**Defendant.**

**CASE NO. 1:21-CR-480 (BAH)**

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by and through its undersigned counsel, respectfully submits this sentencing memorandum for the above-captioned matter. On November 21, 2024, Defendant Edgar Fabian Villasenor-Garcia, also known as "Gari," "Gary," and "El Monje" ("Defendant") pled guilty pursuant to a non-cooperation Plea Agreement to conspiracy to distribute cocaine and methamphetamine for unlawful importation into the United States. For the reasons set forth herein, the Government requests that this Court sentence Defendant to 262 months of imprisonment, five years of supervised release, and a mandatory $100 special assessment. The Government's recommended 262-month sentence falls at the low end of the Guidelines range as calculated by the Probation Office and consistent with the parties' Plea Agreement. Defendant is subject to the ten-year statutory mandatory minimum sentence.

## I. INTRODUCTION

Defendant was an armed member of a prolific and violent drug trafficking cartel in Mexico called *Cártel de Jalisco Nueva Generación* ("CJNG"). For over five years, Defendant helped the CJNG distribute large quantities of cocaine and methamphetamine destined for the United States. He used a firearm in furtherance of the conspiracy and was responsible for distributing at least 450

kilograms of cocaine and at least 780 kilograms of methamphetamine.[1] The Government's recommended 262-month sentence is sufficient but not greater than necessary to comply with 18 U.S.C. § 3553 because it accounts for Defendant's conduct without creating unwarranted sentencing disparities.

## II.   FACTUAL BACKGROUND

### A.   Offense Conduct

From before 2017 to July 19, 2021, in Mexico, the United States, and elsewhere, Defendant was part of a conspiracy to distribute cocaine and methamphetamine on behalf of the CJNG for unlawful importation into the United States. Dkt. No. 30, ¶ 1. During the course of the conspiracy, Defendant knew that the CJNG was trafficking more than 450 kilograms of cocaine and more than 45 kilograms of methamphetamine destined for the United States. *Id.* ¶¶ 2, 6. Defendant also knew that the CJNG was producing large quantities of methamphetamine in labs using imported precursor chemicals. *Id.* ¶ 2.

In furtherance of the conspiracy, Defendant delivered cocaine and methamphetamine in Zapopan and Guadalajara, Jalisco, Mexico. *Id.* ¶ 3. Specifically, Defendant personally distributed at least 5 kilograms of methamphetamine per week from 2017 to 2019, and at least 0.5 kilograms of cocaine per week from 2017 to 2018. *Id.*

During and in furtherance of the conspiracy, Defendant personally carried a firearm. *Id.* ¶ 5. He also knew that CJNG members and leaders used firearms in furtherance of the conspiracy,

---

[1] This memorandum uses the quantity of methamphetamine Defendant personally distributed, which is considerably higher than the 45-kilograms-or-more threshold quantity under the U.S. Sentencing Guidelines ("U.S.S.G") § 2D1.1(c)(1). *See* Dkt. No. 30, ¶ 3 (noting Defendant distributed "at least 5 kilograms of methamphetamine per week" from 2017 to 2019); *see also id.* ¶¶ 1, 6 (noting Defendant's knowledge and responsibility for more than 450 kilograms of cocaine and more than 45 kilograms of methamphetamine based on U.S.S.G. § 2D1.1(c)(1)'s highest threshold quantities).

including to protect drugs and drug proceeds, to control the CJNG, to fight other competing criminal organizations, and to escape capture by law enforcement. *Id.* ¶ 2. For instance, on April 2, 2020, while working on behalf of the CJNG in Cancun, Mexico, Defendant admitted knowing that other CJNG members who were with him carried firearms. *Id.* ¶ 4.

**B. Procedural History**

On July 19, 2021, a federal grand jury sitting in the District of Columbia returned a two-count Indictment charging Defendant with: 1) conspiracy to distribute five kilograms or more of cocaine and 500 grams or more of methamphetamine, intending, knowing, and having reasonable cause to believe that those substances would be unlawfully imported into the United States, in violation of 21 U.S.C. §§ 959(a), 960(b)(1)(B)(ii), 960(b)(1)(H), 963, and 18 U.S.C. § 2 (Count One); and 2) possession and use of a firearm in furtherance of the drug trafficking offense charged in Count One, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), 924(c)(1)(A)(ii), and 2 (Count Two). Dkt. No. 1.

On April 2, 2020, prior to being indicted in the United States, the Defendant was arrested by Mexican authorities on local charges. On June 3, 2022, and while in Mexican custody, Defendant was served with a provisional arrest warrant pursuant to the U.S. extradition request in this case. Since that date, he remained detained in Mexico pending his extradition. Defendant was extradited to the United States on September 15, 2023.

On September 18, 2023, Defendant made an initial appearance in the U.S. District Court for the District of Columbia and was arraigned on the Indictment. On November 21, 2024, Defendant pled guilty to Count One of the Indictment, pursuant to a non-cooperation Plea Agreement. Dkt. Nos. 28, 30 (the Plea Agreement and the Joint Statement of Stipulated Facts); *see*

*also* Min. Entry, Nov. 21, 2024. Pursuant to that agreement, the Government will dismiss Count Two at sentencing, which is scheduled for February 21, 2025.

## III. PRESENTENCE INVESTIGATION REPORT

### A. Statutory Penalties

Defendant now faces sentencing on Count One of the Indictment.

The parties and the Probation Office agree that Defendant faces a mandatory minimum sentence of ten years of imprisonment, a maximum sentence of life imprisonment, a fine up to $10,000,000, and a term of supervised release of at least five years. Dkt. No. 28 ¶ 2; Dkt. No. 35, ¶ 4. Defendant is ineligible for safety valve relief pursuant to 18 U.S.C. § 3553(f). Dkt. No. 28, ¶ 3(e); Dkt. No. 30, ¶¶ 2, 5; Dkt. No. 35, ¶ 5.

### B. Sentencing Guidelines Calculation

The Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007). Although the Guidelines are advisory, not mandatory, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark" for determining a defendant's sentence. *Id.*; *United States v. Booker*, 543 U.S. 220, 222 (2005) (holding that the Guidelines were not mandatory). The Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions." *Gall*, 552 U.S. at 46.

On January 31, 2025, the Probation Office issued a final Presentence Investigation Report ("PSR") and a sentencing recommendation in this case. Dkt. No. 35 ("PSR"); Dkt. No. 36, at 2 (noting the [redacted] [redacted]). The PSR's Guidelines calculation mirrors the

parties' calculation, as stated in the Plea Agreement. PSR ¶¶ 5-6, 23-35; Dkt. No. 28, ¶ 3.

Specifically, based on the total drug quantity that Defendant is responsible for—450 kilograms or more of cocaine and 45 kilograms or more of methamphetamine—and pursuant to U.S.S.G. § 2D1.1(a)(5) and (c)(1), the Probation Office calculated Defendant's base offense level at 38. PSR ¶ 24. The Probation Office also applied the following sentencing enhancements: a two-level increase for Defendant's possession of a firearm under U.S.S.G. § 2D1.1(b)(1), and a two-level increase for importation of methamphetamine into the United States under U.S.S.G. § 2D1.1(b)(5). *Id.* ¶¶ 25-26. The PSR also notes that Defendant is not eligible for a zero-point offender reduction pursuant to U.S.S.G. § 4C1.1 because he possessed a firearm in connection with the offense. *Id.* ¶ 34. For the same reason, Defendant is ineligible for relief under the safety valve provision. *Id.* ¶ 5.

The Probation Office calculated Defendant's criminal history as Category I, which the parties do not dispute. *Id.* ¶¶ 6, 38; Dkt. No. 28, ¶ 3. Accordingly, based on a total offense level of 39 and a Criminal History Category I, Defendant's Guidelines range is 262 to 327 months' imprisonment. PSR ¶¶ 6, 70-71; Dkt. No. 28, ¶ 3. His Guidelines range for any fine is $50,000 to $10,000,000. PSR ¶ 89.

**C. Defendant's PSR Objections**

1. <u>Defendant's objection to paragraph 41 should be rejected</u>

[redacted]

[redacted] The Government agrees with the Probation Office's inclusion of [redacted]

2. Defendant's objection to Paragraph 42 should be rejected

[redacted]

[redacted]

[2] The Government was unable to ascertain the docket number for Defendant's filing of PSR objections, which is not visible to the Government on the Electronic Case Filing system.

[redacted]

In April 2024, however, Defendant was provided with [redacted], which the Government obtained pursuant to a Mutual Legal Assistance Treaty ("MLAT") request.[3] Contrary to Defendant's assertion that there is [redacted]. *See* Ex. A, at 2; Exs. B and B-1[4] ([redacted]).

[redacted]

[redacted]

[3] On April 30, 2024, the Government produced the said case files under Bates numbers 00068828 to 00071001, including the attached Exhibits B, C, D, and E. The said exhibits are filed under seal because they contain nonpublic information.
[4] Exhibits B-1, C-1, and E-1 are the translated documents for Exhibits B, C, and E, respectively.

[Page content fully redacted]

8

## IV. SENTENCING FACTORS UNDER 18 U.S.C. § 3553(a)

After calculating the applicable Guidelines range, a district court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *Gall*, 552 U.S. at 49-50. In doing so, a district court "may not presume that the Guidelines range is reasonable but must make an individualized assessment based on the facts presented." *Id.* at 39.

Some of the factors courts must consider pursuant to § 3553(a) include: the nature and circumstances of the offense (§ 3553(a)(1)); the history and characteristics of the defendant (same); the need for the sentence to reflect the seriousness of the offense and promote respect for the law (§ 3553(a)(2)(A)); the need for the sentence to afford adequate deterrence (§ 3553(a)(2)(B)-(C)); and the need to avoid unwarranted sentence disparities among defendants with similar records and conduct (§ 3553(a)(6)). In this case, all § 3553(a) factors weigh in favor of a lengthy term of incarceration.

### A. The nature and circumstances of the offense, and need for the sentence to reflect the severity of the offense

For at least five years, from before 2017 to mid-2021, Defendant willfully took up arms and operated as part of one of Mexico's most powerful and violent cartels, the CJNG. Dkt. No. 30, ¶¶ 1-2, 8. The CJNG kills, tortures, corrupts, and traffics hundreds of tons, if not more, of cocaine, methamphetamine and other drugs into the United States and other places to feed its greed. The CJNG also uses its drug proceeds to fund its violence, and by doing so, ravages countless lives and communities. It is Defendant's and his co-conspirators' criminal activities, doing CJNG's bidding day in and day out, that made the CJNG the monstrous cartel that it is today.

As a CJNG member, Defendant personally distributed at least 52 kilograms of cocaine and 780 kilograms of methamphetamine in Zapopan and Guadalajara areas of Jalisco, Mexico. Dkt. No. 30, ¶ 3 (noting Defendant "personally participated in the delivery of at least 0.5 kilograms of

cocaine per week" from 2018 to 2018). But beyond what he personally distributed, Defendant admits that he had actual knowledge and is responsible for the distribution of more than 450 kilograms of cocaine. *Id.* ¶¶ 2-3, 6. Defendant willfully joined the transnational conspiracy, knowing that the CJNG targeted the United States and produced large quantities of methamphetamine destined for the United States using imported precursors. *Id.* ¶¶ 2, 6, 8.

Additionally, Defendant possessed a firearm in furtherance of the above-noted CJNG distribution and trafficking operations. *Id.* ¶ 5. He knew that other CJNG members and leaders similarly carried firearms to protect drugs and drug proceeds, to control the CJNG, to fight rival cartels, and to escape capture by law enforcement—including on April 2, 2020, in Cancun, Mexico. *Id.* ¶¶ 2, 4.

Defendant's admission to possessing a firearm as a member of a violent cartel and in furtherance of trafficking two extremely dangerous and destructive drugs underscores the seriousness of his offense. In the United States, trafficked cocaine and methamphetamine, especially at the scale that Defendant and the CJNG were operating, further drug addiction, devastating American families and communities in the process. Drug trafficking operations also erode national security by creating routes and opportunities for other trafficking activities involving firearms, ammunition, bulk cash, and human beings. But the detrimental impact of Defendant's conduct is not limited to the United States alone; it also weakens and poisons Mexico and other countries. Society on both sides of the U.S.-Mexico border incurs enormous costs in dealing with the effects of drug trafficking, including the associated violence and law enforcement burdens.

Accordingly, only a significant sentence as recommended by the Government is proportional and sufficient to reflect the seriousness of Defendant's offense.

**B. The History and Characteristics of Defendant**

Defendant's history shows that he was not born into crime, nor was he driven into crime by poverty or lack of opportunities—factors that weigh in favor of the recommended lengthy sentence.

[redacted]

Despite his stable and nurturing upbring, professional legal education, and gainful income to sustain a lawful living, Defendant chose the life of crime. As early [redacted]

[5] Based on the Treasury Department's annual reported exchange rates for Mexican pesos, the Peso-to-Dollar exchange rates in 1997, 1998, 1999, and 2000 were respectively 7.75, 8.6, 10.1, and 9.38. *See* Treasury Dep't, *Treasury Reporting Rates of Exchange 1997*, GovInfo (Dec. 31, 1997), https://www.govinfo.gov/app/details/GOVPUB-T63_100-df6e98d19bcf6ba2d231a10f6c9d5260 (providing the exchange rate on page 15 of the report); Treasury Dep't, *Treasury Reporting Rates of Exchange 1998*, GovInfo (Dec. 31, 1998), https://www.govinfo.gov/app/details/GOVPUB-T63_100-35141809945353cd5a2c6d3565d5d460 (providing the exchange rate on page 9 of the report); Treasury Dep't, *Treasury Reporting Rates of Exchange 1999*, GovInfo (Dec. 31, 1999), https://www.govinfo.gov/app/details/GOVPUB-T63_100-0c3e625b6893f57915d6382b28968a2c (providing the exchange rate on page 9 of the report); and Treasury Dep't, *Treasury Reporting Rates of Exchange 2000*, GovInfo (Dec. 31, 2000), https://www.govinfo.gov/app/details/GOVPUB-T63_100-961cf6145650a813eb61a4d466e3aa2b (providing the exchange rate on page 9 of the report).

[redacted]

[redacted] Defendant made a knowing and willful choice to pursue drug trafficking for financial gain. Dkt. No. 30, ¶ 8. During the period of the charged conspiracy, Defendant was not just a drug trafficker, he was [redacted].

[redacted] As this Court is uniquely aware, the CJNG is well-known for its brutal and lethal assault on Mexican law enforcement authorities.

[redacted]



[redacted]

[redacted]

[redacted] Despite all that, he pledged allegiance to the CJNG and became [redacted]

As such, only a lengthy sentence as recommended by the Government is sufficient to address Defendant's history and characteristics.

**C. The need for the sentence to afford adequate deterrence**

Deterrence is a major sentencing factor in this case, given the CJNG's operations and

Defendant's record. Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by a given defendant. 18 U.S.C. § 3553(a)(2)(B)-(C); *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010) (discussing goals of general and specific deterrence).

***General Deterrence***

A significant sentence is needed "to afford adequate deterrence to criminal conduct" by others. 18 U.S.C. § 3553(a)(2)(B). The CJNG, as one of the most prolific drug trafficking organizations the world has ever seen, runs an expansive operation: from well-armed enforcers to money laundering operations, and from clandestine laboratories to distribution networks with routes into the United States, Europe, and elsewhere. To enforce its profitability, the CJNG bribes, intimidates, tortures, kidnaps, and kills; it relies on recruiting and maintaining members to carry out those acts. The cartel is so powerful that its members operate with a sense of impunity. A significant sentence in this case can help remind all existing and would-be drug traffickers—including those who by their actions have grown and sustained the CJNG—that punishment by the U.S. criminal justice system is certain and severe.

***Specific Deterrence***

As already noted, Defendant is a recidivist. In light of this record and his dramatic life choice to become a violent drug trafficker, the Government has zero confidence that Defendant would stay on the lawful path if released without a meaningfully deterring punishment. To protect the public from further crimes by Defendant, the sentence in this case must impress upon him that imprisonment is not just a cost of doing business

but can be a bankrupting accountability.

**D. Unwarranted Sentencing Disparities**

Finally, § 3553(a)(6) requires a specific evaluation of similarly situated defendants "to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." When determining whether a sentence creates an unwarranted disparity, courts should consider, *inter alia*, a defendant's criminal history, total offense level, Guidelines range, acceptance of responsibility, the nature and extent of a defendant's participation in the criminal activity, and whether and to what extent cooperation was a factor in sentencing. *See, e.g.*, *United States v. Mejia*, 597 F.3d 1329, 1344 (D.C. Cir. 2010) (concluding that difference in sentences was "entirely explained" and not unwarranted due to differences in conduct). A defendant is only entitled to "a weighing of the section 3553(a) factors that are relevant to [his] case, not to a particular result." *United States v. Carrasco-De-Jesus*, 589 F.3d 22, 29 (1st Cir. 2009).

Defendant was an armed CJNG member who over the course of at least five years furthered CJNG's massive drug trafficking operations, from manufacturing to trafficking. PSR ¶¶ 11-12. Defendant admitted responsibility for CJNG's trafficking of at least 450 kilograms of cocaine and at least 780 kilograms of methamphetamine into the United States—triggering the highest base offense level under the Guidelines. *Id.* ¶¶ 11, 13, 24.

While the average and median sentences provided in the PSR are helpful, they do not capture at least four important aspects of this case: 1) Defendant's trafficking of at least 780 kilograms of methamphetamine; 2) his use of a firearm in furtherance of drug trafficking; 3) a dismissed firearm count with a five-year consecutive mandatory minimum sentence; and 4) an alarming criminal history that is not captured in the Guidelines calculation. PSR ¶ 73. The PSR's

identified average and median sentences of 211 and 210 months, respectively, are for cases involving mainly cocaine, final offense level of 39, and Criminal History Category I. PSR ¶ 98.

The Government's recommended sentence of 262 months' imprisonment accounts for the missed aspects noted above. Moreover, the recommended sentence does not lead to unwarranted sentencing disparities. The Government has identified several similar cases as presented below. In selecting these cases, the Government considered defendants' conduct, Guidelines range, criminal history, extent of cooperation, acceptance of responsibility, and sentence.

**Defendant A**[6]

Defendant A pled guilty to conspiracy to distribute cocaine for unlawful importation into the United States, in violation of 21 U.S.C. §§ 959(a), 960(b)(1)(B)(ii), and 963. Defendant A was a Mexico-based cocaine broker and investor. Defendant A knew that the conspiracy involved tonnage quantities of cocaine and agreed to receive a 1,250-kilogran cocaine shipment in Mexico for further distribution. Defendant A was held accountable for 3,100 kilograms of cocaine.

Defendant A's base offense level was 38. Defendant A received a four-level leadership role enhancement, and a three-level reduction for acceptance of responsibility. Defendant A had no known criminal history. Following these adjustments, Defendant A's total offense level was 39, with a Guidelines range of 262 to 327 months' imprisonment. Defendant A received a 300-month sentence. Cooperation was not a factor at sentencing.

Defendant's Guidelines range, as determined by the parties and the Probation Office, is the same as Defendant A's. Although Defendant did not receive a role enhancement and may be responsible for lower quantities of cocaine than Defendant A, Defendant still distributed

[6] Due to sealing, references to Defendants A, B, and C have been anonymized. The Government will provide those defendants' names and case numbers to the Court *ex parte* upon request.

substantial quantities of drugs, including the 780 kilograms of methamphetamine that he personally distributed. Moreover, Defendant was trusted by the CJNG leaders to carry out cartel functions, including drug distribution, and he carried a firearm to do that work. In light of these comparisons and the 38 months below Defendant A's sentence, the Government's recommended 262-month sentence would not create an unwarranted sentencing disparity as compared to Defendant A.

**Defendant B**

Defendant B pled guilty to a conspiracy to distribute and possess with intent to distribute methamphetamine and marijuana, in violation of 21 U.S.C. §§ 841(a), 84l(b)(l), and 846. For over a year, Defendant B was a member of a drug trafficking organization that operated within the United States and Mexico. Defendant B was a methamphetamine producer and distributor, responsible for approximately 22 to 44 kilograms of methamphetamine. Defendant B concealed within other objects approximately 10 kilograms of methamphetamine and 1,000 kilograms of marijuana for shipment. Defendant B also pled guilty to a separate count of money laundering conspiracy.

Defendant B's base offense level was 38. Defendant B received a two-level role enhancement, and another two-level enhancement for the money laundering conviction under 18 U.S.C. § 1956. Defendant B had no known criminal history. After a three-level reduction for timely acceptance of responsibility, Defendant B's total offense level was 39, with a Guidelines range of 262 to 327 months' imprisonment. Defendant B was sentenced to 262 months of imprisonment on the drug conspiracy charge alone. Cooperation was not a factor at sentencing.

Despite differences in the underlying conduct, Defendant and Defendant B have the same Guidelines range and recommended sentence. Defendant is responsible for a higher aggregate drug

quantity compared to Defendant B. *See, e.g.*, U.S.S.G. § 2D1.1 cmt. n.8(D) (providing drug conversion tables and noting a higher converted drug weight for cocaine and methamphetamine than for marijuana). Defendant also possessed a firearm in furtherance of the charged conspiracy. Therefore, Defendant's conduct warrants the recommended 262-month sentence in comparison to Defendant B's sentence.

**Defendant C**

Defendant C pled guilty to conspiracy to distribute cocaine for unlawful importation into the United States, in violation of 21 U.S.C. §§ 959(a), 960(b)(1)(B), and 963. Defendant C was a member of a major Mexico-based cartel and a trusted associate of the leader of that cartel. Defendant C identified, inspected, and secured clandestine airstrips in several source countries to load cocaine for transportation to Mexico. At some point, Defendant C personally transported cocaine by aircraft as a pilot. Defendant C conducted at least 10 flights transporting between 400 to 450 kilograms of cocaine per flight. On one occasion, Defendant C attempted to transport a 700-kilogram load of cocaine. The charged conspiracy spanned over a decade.

Defendant C's base offense level was 38. Defendant C received a two-level enhancement for carrying a firearm, another two-level role enhancement as a pilot, and a three-level reduction for acceptance of responsibility. Defendant C had a Criminal History Category I. Following these adjustments, Defendant C's total offense level was 39, with a Guidelines range of 262 to 327 months' imprisonment. Defendant C received a 132-month sentence. Cooperation was a major factor at sentencing, particularly because Defendant C and Defendant C's family had received credible threats due to cooperation.

Defendant and Defendant C are comparable: They were both armed members of a major cartel for years and also distributed significant quantities of cocaine—while Defendant distributed

significant quantities of methamphetamine too. Had Defendant C not cooperated, Defendant C would have received a sentence similar to what the Government is recommending here.

Unlike Defendant C, Defendant did not cooperate. Defendant C, on the other hand, cooperated immediately and extensively. For instance, Defendant C's cooperation was crucial for convicting a major cartel leader, the indictment of seven others, and the transmission of two extradition requests to Mexico. The Government also anticipated at the time of sentencing that Defendant C would testify against multiple other cartel operatives. Defendant C's level of cooperation has led to an approximately 50-60% sentence reduction in similar cases. Therefore, the Government's recommended 262-month sentence here—which is about twice the sentence Defendant C received—would not lead to undue discrepancy between the two defendants.

## V. CONCLUSION

For the reasons set forth above, the Government recommends 262 months of imprisonment, five years of supervised release, and a mandatory $100 special assessment.

Respectfully Submitted,

Dated: February 7, 2025

MARLON COBAR, Chief
Narcotic and Dangerous Drugs Section
Criminal Division
U.S. Department of Justice

By: */s/ Lernik Begian*
Lernik Begian
Douglas Meisel
Trail Attorneys
Narcotic and Dangerous Drugs Section
Criminal Division
U.S. Department of Justice
145 N. Street N.E.
Washington, D.C. 20530
202-514-0917
Lernik.Begian@usdoj.gov
Douglas.Meisel@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the Government's Sentencing Memorandum was served through the ECF filing system to counsel of record for Defendant this 7th day of February 2025.

By: *_/s/ Lernik Begian_*
Lernik Begian
Trial Attorney
Criminal Division
U.S. Department of Justice
Narcotic and Dangerous Drug Section