**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| |
|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>EDGAR FABIAN VILLASENOR GARCIA,<br><br>Defendant. |

Criminal Action No. 21-480 (BAH)

Judge Beryl A. Howell

**MEMORANDUM OPINION AND ORDER**

On February 21, 2025, the defendant, Edgar Fabian Villasenor Garcia, was sentenced to 250 months' incarceration on his plea of guilty, pursuant to a plea agreement, to one count of conspiracy to distribute five kilograms or more of cocaine and 500 grams or more of methamphetamine, intending, knowing, and having reasonable cause to believe that such substances would be unlawfully imported into the United States in violation of 21 U.S.C. §§ 959(a), 960(b)(1)(B)(ii), 960(b)(1)(H), 963, and 18 U.S.C. § 2. *See* Judgment in a Criminal Case ("Judgment"), ECF No. 42. Approximately eight months after his sentencing, defendant filed this *pro se* motion to vacate his sentence, pursuant to 28 U.S.C. § 2255, on the ground that he received ineffective assistance of counsel in multiple respects. For the reasons explained below, defendant's motion is denied.

## I.   BACKGROUND

Set out below are the facts underlying the defendant's conviction, as summarized in the Joint Statement of Stipulated Facts accompanying the plea agreement, which facts were admitted by the defendant at the time of his guilty plea, *see* Joint Statement of Stipulated Facts ("Jt. Stmt. Facts") ¶ 1, ECF No. 30, followed by a summary of the hearings held regarding the defendant's guilty plea and sentencing.

### A.    The Defendant's Criminal Conduct

Defendant is a well-educated criminal lawyer in Mexico, *see* Revised Presentence Investigation Report ¶ 59, ECF No. 44, but nonetheless was a member of the Mexican drug trafficking organization known as Cártel de Jalisco Nueva Generación ("CJNG") for over five years, from before 2017 through July 19, 2021, Jt. Stmt. Facts ¶ 1. During his CJNG membership, defendant "knew that the CJNG was producing large quantities of methamphetamine in labs in Michoacan, Mexico, using 'perfume' and other precursor chemicals imported through the Port of Manzanillo," and "sending large quantities of methamphetamine and cocaine to the United States for distribution," "us[ing] firearms to protect drugs and drug proceeds, to control the CJNG, to fight other criminal organizations, and to escape capture by law enforcement." *Id.* ¶ 2.

As a CJNG member, defendant "delivered cocaine and methamphetamine in Zapopan and Guadalajara in Jalisco, Mexico." *Id.* ¶ 3. Specifically, from 2017 to 2019, he personally participated in the weekly delivery of at least five kilograms of methamphetamine in Zapopan and Guadalajara, and, from 2017 to 2018, of at least half a kilogram of cocaine, totaling, over this period, at least 450 kilograms of cocaine and at least 45 kilograms of methamphetamine. *Id.* ¶¶ 3, 6. He was aware that these drugs were destined to be illegally imported into the United States for further distribution as part of this conspiracy. *Id.* ¶ 6. During and in relation to the conspiracy, defendant carried a firearm. *Id.* ¶ 5.

### B.    Procedural History

On July 19, 2021, a federal grand jury returned a two-count indictment charging defendant with one count of conspiracy to distribute five kilograms or more of cocaine and 500 grams or more of methamphetamine, intending, knowing, and having reasonable cause to believe that such substances would be unlawfully imported into the United States in violation of 21 U.S.C. §§ 959(a), 960(b)(1)(B)(ii), 960(b)(1)(H), and 963, and 18 U.S.C. § 2 ("Count One"), and one

count of using, carrying, and possessing a firearm in furtherance of Count One, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i), 924(c)(1)(A)(ii), and 2 ("Count Two").  Indictment, ECF No. 1.

Over two years later, in September 2023, defendant was extradited to the United States from Mexico.  *See* Arrest Warrant, ECF No. 10.  Over one year later, on November 21, 2024, with the aid of court-appointed counsel, defendant pleaded guilty, pursuant to a plea agreement, to Count One.  *See* Plea Agreement, ECF No. 28; Nov. 21, 2024 Plea Hearing Transcript ("Plea Hr'g Tr.") 24:23-25, 25:1-9, ECF No. 50.  At the time of sentencing, as part of the plea agreement, the government's motion to dismiss Count Two was granted.  *See* Plea Agreement at 3, ECF No. 28; Feb. 21, 2025 Sentencing Hearing Transcript ("Sentencing Hr'g Tr.") 44:8-10, ECF No. 51.

Defendant was sentenced, on February 21, 2025, to 250 months' incarceration and 60 months' supervised release. Judgment at 3.  The sentence imposed reflected a downward departure of 12 months from the advisory guidelines sentencing range of 262 to 327 months and was granted, pursuant to *United States v. Smith*, 27 F.3d 649 (D.C. Cir. 1994), due to defendant's status as a deportable alien being likely to cause a fortuitous increase in the severity of confinement. Sentencing Hr'g Tr. 18:6-24.

Nearly eight months later, on October 10, 2025, defendant filed the instant motion to vacate his sentence.  *See* Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 ("Def.'s Mot."), ECF No. 45.  The government filed an opposition to the motion, *see* Gov't's Opp'n to Def.'s Mot. ("Gov't's Opp'n"), ECF No. 49, supported by an affidavit from defense counsel, *id.*, Ex. A, Trial Defense Counsel's Response to Def.'s Mot. ("Def. Counsel's Resp."), who represented defendant from his initial appearance to sentencing.  Defendant's motion is now ripe for review.

3

## II.    APPLICABLE LEGAL STANDARDS

### A.    28 U.S.C. § 2255

Pursuant to 28 U.S.C. § 2255(a), a prisoner in custody may file a motion to "vacate, set aside or correct" a sentence that was "imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). "After a sentence is imposed, the defendant may not withdraw his plea; rather, 'the plea may be set aside only on direct appeal or collateral attack.'" *In re Sealed Case*, 670 F.3d 1296, 1302 (D.C. Cir. 2011) (quoting FED R. CRIM. P. 11(e)); *see also United States v. Farley*, 72 F.3d 158, 162 (D.C. Cir. 1995). If the court finds "a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

A judgment challenged on collateral attack carries with it a "presumption of regularity," "even when the question is waiver of constitutional rights." *Daniels v. United States*, 532 U.S. 374, 381 (2001) (internal quotation marks omitted). The petitioner bears the burden of establishing a denial of constitutional rights by a preponderance of evidence. *Johnson v. Zerbst*, 304 U.S. 458, 469 (1938); *see also United States v. Simpson*, 475 F.2d 934, 935 (D.C. Cir. 1973) (concluding that, in a § 2255 action to set aside plea of guilty, "the preponderance of evidence supports the judgment rejecting petitioner's claim").

### B.    Ineffective Assistance of Counsel

The Sixth Amendment guarantees that "[d]uring plea negotiations defendants are entitled to the effective assistance of competent counsel." *Lafler v. Cooper*, 566 U.S. 156, 162 (2012) (internal quotation marks omitted). "It is well-established that the validity of a guilty plea depends on 'whether the plea represents a voluntary and intelligent choice,' and that 'the voluntariness of the plea depends on whether counsel's advice' satisfies the Sixth Amendment guarantee of

4

effective assistance." *In re Sealed Case*, 488 F.3d 1011, 1015 (D.C. Cir. 2007) (quoting *Hill v. Lockhart*, 474 U.S. 52, 56 (1985)); *see also United States v. McCoy*, 215 F.3d 102, 107 (D.C. Cir. 2000) ("A plea of guilty is constitutionally valid if and only if it 'represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.") (quoting *Hill*, 474 U.S. at 56). Indeed, a defendant who "ple[d] guilty upon the advice of counsel 'may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel' was not 'within the range of competence demanded of attorneys in criminal cases.'" *United States v. Rubio*, 677 F.3d 1257, 1261-62 (D.C. Cir. 2012) (quoting *Hill*, 474 U.S. at 56).

Challenges to guilty pleas based on ineffective assistance of counsel are evaluated under the two-factor test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). Under that test, "[t]o prevail on an ineffective assistance of counsel claim, 'the defendant must show that counsel's performance was deficient,' and 'that the deficient performance prejudiced the defense.'" *United States v. Henderson*, 108 F.4th 899, 902-903 (D.C. Cir. 2024) (quoting *Strickland*, 466 U.S. at 687-88); *see also Payne v. Stansberry*, 760 F.3d 10, 13 (D.C. Cir. 2014). Failure of either prong of the *Strickland* inquiry will preclude relief. *See Strickland*, 466 U.S. at 697, 700 (noting that "[f]ailure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim," and so a court need not "address both components of the inquiry if the defendant makes an insufficient showing on one"). The *Strickland* analysis applies to § 2255 proceedings, *United States v. Toms*, 396 F.3d 427, 432 (D.C. Cir. 2005), and, consistent with the burden on the defendant to establish the right to relief under § 2255, "the burden to 'show that counsel's performance was deficient' rests squarely on the defendant," *Burt v. Titlow*, 571 U.S. 12, 22-23 (2013) (quoting *Strickland*, 466 U.S. at 687).

The first *Strickland* factor requires a defendant to show that his attorney made errors "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. When engaging in this analysis, the Supreme Court has instructed that "counsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Titlow*, 571 U.S. at 22 (quoting *Strickland*, 466 U.S. at 690); *Payne*, 760 F.3d at 13 ("[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.") (quoting *Strickland*, 466 U.S. at 689); *see also United States v. Mendez-Cruz*, 329 F.3d 885, 891 (D.C. Cir. 2003) ("Judicial scrutiny of counsel's performance must be highly deferential.") (quoting *Strickland*, 466 U.S. at 689).

The second *Strickland* factor requires a defendant to show, "[i]n the context of pleas," a reasonable probability that "the outcome of the plea process would have been different with competent advice." *Lafler*, 566 U.S. at 163. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Thompson*, 721 F.3d 711, 713 (D.C. Cir. 2013) (quoting *Strickland*, 466 U.S. at 694). Demonstrating a reasonable probability in the context of a plea agreement requires a defendant to show "that there is a reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded guilty and would have insisted on going to trial." *Lafler*, 566 U.S. at 163 (alteration in original) (quoting *Hill*, 474 U.S. at 59).

## III.    DISCUSSION

Defendant makes the following arguments in support of his ineffective assistance of counsel claim: (1) his primary language is Spanish and there "were no translators . . . during the proceedings and meetings with his Defense Counsel," Def.'s Mot. at 3 ("Ground One"); (2) his

attorney "did not advocate for [him]" with respect to "flaws within the plea agreement" and "fail[ed] to keep [him] informed of important developments in the course of prosecution," *id.* at 4-5 ("Ground Two" and "Ground Three"); and (3) his attorney "misrepresented the plea agreement claiming that the Prosecution had agreed to a 10 year sentence cap," *id.* at 5 ("Ground Four").  As explained in turn below, defendant's assertions are not supported by the record.

### A.    Ground One: Spanish Translators

Defendant, whose primary language is Spanish, claims his attorney "fail[ed] to provide proper communication" because there "were no translators provided to assist [defendant] during the proceedings and meetings."  Def.'s Mot. at 3.  This assertion is demonstrably false.

At every single hearing, including his change-of-plea and sentencing hearings, defendant benefited from courtroom interpreters.  *See* Min. Entry (Sept. 18, 2023) (Spanish interpreter present at initial appearance and arraignment); Min. Entries (Sept. 22, 2023, Jan. 5, 2024, Mar. 1, 2024) (same, for all three status conferences); Min. Entry (Nov. 21, 2024) (same, for change-of-plea hearing); Min. Entry (Feb. 21, 2025) (same, for sentencing hearing).  Indeed, the day after the issuance of this Court's Standing Order, which instructs counsel to notify the Court of any need for interpretative services at least four days in advance, *see* Standing Order ¶ 4, ECF No. 15, trial defense counsel filed a "notice of need and formally request[ed] the services of an interpreter, in all judicial proceedings," Not. of Need for Interpreter in all Future Proceedings, ECF No. 16.  At no point during any of these hearings did defendant voice his lack of understanding of the proceedings.

Further, at no point during the pendency of his case did defendant inform the Court that he faced a language barrier when communicating with his attorney, who not only possessed a certain level of Spanish proficiency himself, *see* Def. Counsel's Resp. at 3-4, ECF No. 49-1 (studying Spanish in undergraduate and language school), but also ensured the presence of fluent Spanish-

speaking assistants during debriefing and discovery review sessions, *see id.* at 3-4. Trial defense counsel also provided Spanish translations of key documents, including the charges, the government's plea offer, an advisory letter from trial defense counsel to defendant about the plea offer, and the plea agreement. *See* Translated Indictment (Spanish), ECF No. 49-7; Translated Advisory Letter from Martin to Garcia (Aug. 29, 2024) (Spanish) at 1-2, ECF No. 49-3; Translated Aug. 19, 2025 Plea Offer (Spanish) at 31-34, ECF No. 49-3; Translated Plea Agreement (Spanish), ECF No. 29. Defendant's unsupported claims about having "no translators" thus lack merit.

### B.      Ground Two and Three: Defense Counsel's Advocacy

Defendant also contends that his trial counsel was constitutionally deficient because his counsel "did not advocate for [defendant] and did not challenge flaws within the plea agreement" regarding defendant's leadership role and knowledge of others involved in the conspiracy, as well as one of aliases attributed to him. *See* Def.'s Mot. at 4-5. Defendant's arguments are unpersuasive.

Defendant's claim that his counsel failed to advocate for his involvement as a "low-level member of the conspiracy," as opposed to a leader, is belied by the record. *Id.* at 2. Contrary to defendant's assertions, trial defense counsel did object to characterizations of defendant as a leader in the CJNG. Defendant's plea agreement did not include a role enhancement, *see* Plea Agreement, ECF No. 28 (discussing no leadership role), and when, at sentencing, the Presentence Investigation Report included a reference to defendant's alleged leadership role, trial defense counsel objected both in writing and orally, *see* Def.'s Sentencing Mem. at 2, ECF No. 41 (noting defendant "contested" "the leadership role in the conspiracy"); Sentencing Hr'g Tr. at 10:20-21 (stating that the Presentence Investigation Report "references Mr. Garcia as being a leader in the cartel, however, there is no basis for that"). This Court, finding trial defense counsel's advocacy persuasive, ultimately *sustained* the objection  and struck the reference to defendant's leadership

role in the Presentence Investigation Report.  *See* Sentencing Hr'g Tr. at 12:9-20; Revised Presentence Investigation Report, ECF No. 44 (revised, *inter alia*, to delete paragraph 41).

Defendant also takes issue with one of the three aliases attributed to him by the government, "El Monje."  Def.'s Mot. at 4-5.  Defendant now rejects this alias and claims his attorney did not give him "adequate information about how the Prosecution connected 'El Monje' to [him]," thus "fail[ing] [to] inform[] [him] of the important developments of the case" and failing to contest that alias.  *Id.* at 5.  This claims similarly falls short of meeting the *Strickland* standard.

To begin, defendant has not shown that his counsel's services were "professionally unreasonable."  *Strickland*, 466 U.S. at 688, 691-92.  Despite, by defendant's own admission, being "told [by his attorney] that an informant had spoken of his presumed alias 'El Monje,'" defendant does not claim that he informed his attorney of his disagreement with the alias attribution at the time, such that his attorney would know to contest that fact.  *See* Def.'s Mot. at 4-5.  In any event, defendant's belated rejection of the "El Monje" alias is also contradicted by defendant's own prior statements, made under oath, admitting to using that alias.  Defendant had confirmed at the plea hearing that he had read the plea agreement, including the Joint Statement of Stipulated Facts, and had "discussed it fully with [his] lawyer."  Plea Hr'g Tr. at 12:6-7.  In the Joint Statement of Stipulated Facts, which were read to him in Court and translated by a Spanish interpreter, *see* Plea Hr'g Tr. 14:11-19:5, 16, defendant affirmed that "[f]rom before 2017 and continuing thereafter up to July 19, 2021," in addition to his legal name, he was "also known as 'Gari,' 'Gary,' and 'El Monje.'"  *Id.* 15:2-23; *see also* Jt. Stmt. Facts ¶ 1.  Generally, a defendant's representations at a plea hearing, "as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceeding and the defendant's declarations in open court carry a strong presumption of verity."  *Farley*, 72 F.3d at 163.

9

Regardless, even if counsel had acted unreasonably, defendant fails to show that he suffered any prejudice from counsel's actions. Even now, defendant does not challenge his participation in the conspiracy to which he pleaded guilty in Count One or the amount of controlled substances for which he was accountable. Indeed, although defendant pleaded to one count of conspiracy to distribute five kilograms or more of cocaine and 500 grams or more of methamphetamine, defendant admitted in the stipulated statement of facts to participating in the distribution of *ninety times* that amount of cocaine and *ninety times* that amount of methamphetamine. Jt. Stmt. Facts ¶ 3 ("at least 450 kilograms of cocaine and at least 45 kilograms of methamphetamine" (emphasis added)). Defendant's only challenge to his conviction is that he "was a low-level drug offender, not a conspiracy leader," Def.'s Mot. at 5—but defendant's plea agreement did not include a role enhancement or any mention of a leadership role, *see* Plea Agreement, ECF No. 28, and the Court rejected the government's attribution of leadership to defendant at sentencing, *see* Sentencing Hr'g Tr. at 12:9-20. Further, due to the stacking violation of 18 U.S.C. § 924(c) in Count Two, which was ultimately dismissed as part of the plea agreement, defendant faced a minimum mandatory sentence of 17 years had he gone to trial. *See* Indictment at 2. Considering all these factors, defendant has not shown a reasonable probability that "the outcome of the plea process would have been different with competent advice." *Lafler*, 566 U.S. at 163.

Defendant's claims that his counsel's advocacy was constitutionally deficient thus fall far short of the requisite showing under *Strickland*.

### C.      Ground Four: Defense Counsel's Explanation of the Sentencing Range

Finally, defendant's bald assertion that his attorney "misrepresented the plea agreement claiming that the Prosecution had agreed to a 10 year sentence cap" lacks support in the record. Mot. at 5.

In the affidavit filed with the government's opposition, defense counsel denies promising defendant he would receive a ten-year sentence. Def. Counsel's Resp. at 6. Defense counsel's affidavit is supported by a letter, attached as an exhibit, that defense counsel sent to defendant on August 29, 2024, explaining the offer terms and clearly stating that for Count One, "[t]he minimum term of imprisonment is [sic] for violating Section 960 is 10 years and the maximum is a life sentence." Ex. 7 to the Gov't's Opp'n, Letter from Martin to Defendant (Aug. 29, 2024) at 3, ECF No. 49-3 (emphasis omitted). The letter further informed defendant that "the minimum term of imprisonment is 7 years" for Count Two, brandishing a firearm, which "must run consecutive to any other sentence" and increases the mandatory minimum to 17 years if defendant were to proceed to trial and be convicted on both counts. *Id.* (emphasis omitted). The letter then explains to defendant that "[i]f [he] accept[s] [the] Plea Offer the government would be willing to dismiss the gun charge. Hence, [he] would be facing a minimum mandatory of 10 years in prison." *Id.* The letter concludes by informing defendant that if he rejected the plea, the trial is "expect[ed]" to "take place early in 2025." *Id.* at 4.

Following acceptance of the plea offer, defendant received a Spanish version of the plea agreement, which he signed on November 20, 2024, similarly informing him that the sentence has yet to be determined. *See* Plea Agreement (Spanish), ECF No. 29. The plea agreement signed by defendant expressly states that the statutory minimum is ten years and the statutory maximum is life imprisonment, that defendant's sentencing range is 262 to 327 months, that "the sentence has not yet been determined by the Court," and that "any recommendation that the Government makes to the Court as to sentencing . . . is not binding on the Court and the Court may disregard the recommendation in its entirety." Plea Agreement at 3. The plea agreement, as docketed, contains check marks next to and within each paragraph indicating discussions between defendant and his

counsel about each term, which discussions are confirmed by defendant's initials on several pages. *Id.* Defendant also signed the final acknowledgment page of the plea agreement, certifying that he had reviewed the agreement "at length" with his counsel, "fully" understood the agreement, "agree[d] to the information contained" therein "voluntarily" and "without reservation," and intended "to be legally bound" by it. Plea Agreement at 9. In signing the plea agreement, defendant "reaffirm[ed] that no promises, agreements, understandings, or conditions have been made" except those in the plea agreement, as well as his satisfaction with his counsel. *Id.* Defendant signed a similar "acknowledgment" page for the stipulated statement of facts. Jt. Stmt. Facts at 9.

At the change-of-plea hearing, with the assistance of the Spanish interpreter, the Court similarly reviewed the plea paperwork with defendant and confirmed defendant's understanding of the plea agreement, including that no promises were made to defendant regarding his ultimate sentence. *See* Plea Hr'g Tr. 24:4-16. Defendant again attested to his understanding of the plea terms and confirmed that no one "promised or suggested to [him] that merely because [he] [is] pleading guilty that [the Court] will give [him] a lighter sentence," *id.* 24:7-8, that no one "forced, threatened, or coerced [him] in any way into entering a plea of guilty," *id.* 24:10-11, and that he was "entering this plea of guilty voluntarily and of [his] own free will because [he] [is] guilty and for no other reason," *id.* 24:13-14. In short, defendant, himself a well-educated criminal lawyer, repeatedly confirmed both in writing and orally that no promises were made when he signed the plea agreement about his ultimate sentence. His assertion now that he "lie[d] and misrepresent[ed]" to the Court under oath "[e]xpecting a favorable outcome" holds little water. *See* Mot. at 5.

## IV.    CONCLUSION AND ORDER

Defendant has failed to establish ineffective assistance of counsel, which serves as the basis of his motion to vacate his sentence under 28 U.S.C. § 2255.  Accordingly, is hereby

**ORDERED** that defendant's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255, ECF No. 45, is **DENIED**.

**SO ORDERED.**

Date:  April 8, 2026

_____
**BERYL A. HOWELL**
United States District Judge